1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
UNITED STATES OF AMERICA      .     Criminal No. 1:13cr418
                              .
      vs.                     .     Alexandria, Virginia
                              .     October 30, 2013
YOUSEF MOHAMID AL-KHATTAB,    .     2:09 p.m.
                              .
            Defendant.        .
                              .
.  .  .  .  .  .  .  .  .  .  .
```

TRANSCRIPT OF PRE-INDICTMENT PLEA
BEFORE THE HONORABLE LIAM O'GRADY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:              GORDON D. KROMBERG, AUSA
                                 ALLISON ICKOVIC, SAUSA
                                 United States Attorney's Office
                                 2100 Jamieson Avenue
                                 Alexandria, VA 22314


FOR THE DEFENDANT:               ALAN H. YAMAMOTO, ESQ.
                                 Law Office of Alan Yamamoto
                                 643 South Washington Street
                                 Alexandria, VA 22314


ALSO PRESENT:                    SA SCOTT McGUCKIN


OFFICIAL COURT REPORTER:         ANNELIESE J. THOMSON, RDR, CRR
                                 U.S. District Court, Fifth Floor
                                 401 Courthouse Square
                                 Alexandria, VA 22314
                                 (703)299-8595


(Pages 1 - 33)


COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

1              P R O C E E D I N G S

2                   (Defendant present.)

3          THE CLERK:  Criminal Case 1:13cr418, United States of

4    America v. Yousef Mohamid Khattab.  Will counsel please

5    identify themselves for the record.

6          MR. KROMBERG:  Good afternoon, Your Honor.  Gordon

7    Kromberg for the United States.  With me at counsel table is

8    Special Assistant United States Attorney Allison Ickovic and

9    Special Agent Scott McGuckin from the United States Secret

10   Service.

11         THE COURT:  All right, good afternoon to each of you.

12         MS. ICKOVIC:  Good afternoon.

13         MR. YAMAMOTO:  Good afternoon, Your Honor.  Alan

14   Yamamoto for Mr. al-Khattab.

15         THE COURT:  All right.  Good morning, Mr. Yamamoto.

16   Good afternoon, Mr. Khattab.

17         THE DEFENDANT:  Good afternoon.

18         THE COURT:  All right, this comes on for entry of a

19   plea.  Are the parties ready to proceed?

20         MR. YAMAMOTO:  Yes, Your Honor.

21         MR. KROMBERG:  Yes, Your Honor.

22         THE COURT:  All right.

23         MR. KROMBERG:  I would like to note, though, that the

24   papers that have been handed up to you today are, differ in

25   very slight respect from the ones that we dropped off with your

1    chambers earlier.  On the statement of facts, portions of

2    paragraphs 2 and 29 were deleted, and the signature blocks were

3    reversed for the government attorneys.  Also, in the plea

4    agreement -- oh, I'm sorry.  Thank you.

5          Also, in paragraph 14, a sentence was deleted from

6    paragraph 14; and then on the plea agreement, what has been

7    paragraphs 8 and 9 have been replaced by one paragraph, a new

8    paragraph, paragraph 8 in the plea agreement.  And other than

9    that, they're the same, Judge.

10          THE COURT:  What material change does -- in the plea

11   agreement do the changes make?  I mean, is it still a

12   straight-up plea to the --

13          MR. KROMBERG:  Yes.  They have to do with the

14   language -- the Department of Justice insisted on different

15   language regarding the possibility or not possibility of being

16   prosecuted in another district, but there's no other change to

17   the plea agreement.

18          THE COURT:  All right, let me --

19          MR. YAMAMOTO:  I apologize, Your Honor.

20          THE COURT:  That's all right; take your time.  It

21   still says that Mr. Khattab cannot be further prosecuted in

22   the -- by the federal government for specific conduct, right?

23          MR. KROMBERG:  Well, what it says is that the U.S.

24   Attorney's Office and the National Security Division of the

25   United States Department of Justice will not further criminally

1    prosecute the defendant for the specific conduct described in

2    the information or statement of facts.

3           That is not limited to this district, but it is

4    limited to the United States Attorney's Office and the National

5    Security Division of the United States Department of Justice,

6    which has, "jurisdiction" may be the wrong word, but

7    authorization authority for cases like this.

8           THE COURT:  Well, let's, let's be real sure we all

9    understand each other before Mr. Khattab is asked to plead

10   guilty to something.  I read that as saying the federal

11   government cannot further prosecute Mr. Khattab for this crime

12   as listed in the statement of facts.  Do you disagree with

13   that?

14          MR. KROMBERG:  I think that the -- if the Civil

15   Rights Division of the Department of Justice were, wanted to

16   prosecute Mr. Khattab for the very same facts with a different

17   charge, this plea agreement would not bar that.  I think and

18   I've told Mr. Yamamoto and Mr. al-Khattab that I think it's

19   extremely unlikely and I would kick and scream to do my best to

20   prevent that from happening, but this is the language that we

21   were required to insert last night.

22          THE COURT:  And is there any possible state action on

23   this -- I have never seen a state statute which covered this

24   type of crime, but --

25          MR. KROMBERG:  I think it's possible that some state

1   might cover it, but we, we never -- the plea agreement never

2   purported to cover anything involving state action.

3          THE COURT:  State action, yeah.

4          Mr. Yamamoto, what comment, if any, do you want to

5   make to that?

6          MR. YAMAMOTO:  Well, we had a discussion with the

7   government about this prior to the Court coming out.  We aren't

8   particularly happy about it.  Particularly in the *Morton* case,

9   the United States said it wouldn't further prosecute, so

10  there's a distinction there that would concern me.  We told the

11  government that we might raise an *Alford* plea, which the

12  government said they would not be willing to go forward with,

13  so we're stuck sort of between a rock and a hard place.

14         They've given us some assurances, at least as far as

15  the U.S. Attorney's Office here goes, about prosecutions; but

16  that certainly does not cover the Justice Department as a

17  whole, and certainly if the Justice Department decided it

18  wanted to go forward with prosecution of Mr. al-Khattab, it

19  could do so notwithstanding whatever objections the U.S.

20  Attorney's Office in the Eastern District might have, but we're

21  willing to go forward with this and keep our fingers crossed.

22  I don't know what else we can do.  We face immense jail time if

23  he were to be indicted and we go forward and he's convicted.

24         THE COURT:  All right, then let's have Mr. Khattab

25  come and be sworn.

1              YOUSEF MOHAMID AL-KHATTAB, DEFENDANT, AFFIRMED

2              THE COURT:  All right, let's start with our last --

3    our conversation about the, the protection that you're being

4    given by this U.S. Attorney's Office and the Department of

5    Justice National Security Division.  You've listened to the

6    conversation we just had, and you've had an opportunity to

7    speak to Mr. Yamamoto about that?

8              THE DEFENDANT:  Your Honor, briefly, I did.  I'm not

9    familiar with the whole legal system and how the wording goes.

10   I really -- I understand, but as my attorney said, I just don't

11   see any other way that's going to be beneficial -- and I hate

12   to say it -- for me.  So --

13             THE COURT:  Do you need more time to speak with

14   Mr. Yamamoto?  Because I'll give you --

15             THE DEFENDANT:  No, no.

16             THE COURT:  We'll take a recess.

17             THE DEFENDANT:  No, Your Honor.  It's not a matter

18   that I -- but I like to think there's some honest people in the

19   government, and I believe there is still some, and I just hope

20   that those are going to be the ones in charge of this in that

21   level, whatever.

22             THE COURT:  All right, thank you.

23             THE DEFENDANT:  You're welcome.

24             THE COURT:  All right, how old are you, sir?

25             THE DEFENDANT:  I'm 45 years old.

7

```
1          THE COURT:  And how far did you go in school?

2          THE DEFENDANT:  I finished eighth grade, and I went

3   back to college in 2010 and graduated from Culinary Arts in

4   Atlantic Cape Community College.

5          THE COURT:  Atlantic City Community College?

6          THE DEFENDANT:  Atlantic Cape Community College.

7   It's in Atlantic County.  It's called the Academy of Culinary

8   Arts.

9          THE COURT:  All right.  You were born and raised in

10  the United States?

11         THE DEFENDANT:  Yes, I was, Your Honor.

12         THE COURT:  All right.  And English is your natural

13  language?

14         THE DEFENDANT:  That is correct.

15         THE COURT:  You can speak and write --

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  -- and read the English language

18  fluently?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  All right.  Have you told Mr. Yamamoto

21  everything about this case so that he could represent you to

22  the best of his ability?

23         THE DEFENDANT:  I really -- I'm sorry if I have to be

24  vocal, and I might be shooting myself in the foot, but there's

25  not much I could really discuss via phone even though I do
```

1   discuss with my, my lawyer.  The fact is that everything that

2   I've done has and is been monitored, so to the best of my

3   ability, I'm trying to, but the more I speak on the phone, the

4   more I'm shooting myself in the foot, so this is the best I

5   think I'm going to be able to get out of this.

6           THE COURT:  Well, you've gone over the statement of

7   facts with him carefully and discussed the government's ability

8   to prove these events occurred and the significance of them to

9   Mr. Yamamoto?

10          THE DEFENDANT:  I think the initial statement of

11  facts, Your Honor, I don't know if you saw that, I thought it

12  was -- okay.  I'm sorry.  I did not agree with it, and I

13  thought it was a lot of commentary.  The government cleaned it

14  up; and I could, you know, that's why I'm signing a plea right

15  now.  What I see that's on there right now, I could see their

16  point; that is, I've violated the law.

17          THE COURT:  All right.  And you've gone over the

18  elements of the charge that is identified in the criminal

19  information in that you -- which charges you with using the

20  Internet to place another in fear of death or serious injury,

21  the elements of that charge, with Mr. Yamamoto?

22          THE DEFENDANT:  By the elements, you mean reading

23  over the paragraph?

24          THE COURT:  Intent.

25          THE DEFENDANT:  Well, I'm guilty of putting those

1   things up, and I'm saying that, I'm saying -- please forgive

2   me.  I'm just trying to --

3           THE COURT:  Yeah.

4           THE DEFENDANT:  I put all those things up.  I didn't

5   agree with their intention that they said that I put those

6   things up, but the fact is I did put those things up, and

7   that's what I'm pleading guilty to.

8           THE COURT:  All right.  I think the words, words

9   speak for themselves, correct, and -- but you have -- in order

10  for -- I'm going to ask you in a few minutes whether you are

11  pleading guilty because you are guilty of the charges and if

12  one of the elements of the offense is whether you intended to

13  put other persons in fear of injury or death, and if you do not

14  believe that these -- if you don't believe that the words that

15  you spoke through the Internet were intended to put persons in

16  fear of bodily harm or death, then, you know, that's one of the

17  elements of the offense.

18          Now, the -- I know you discussed an *Alford* plea at

19  some stage; but you, you need to be prepared if you want to

20  plead guilty here today to say yes to that charge.

21          THE DEFENDANT:  Your Honor, I mean, I'm not living in

22  a society that's going to, you know, custom tailor things to

23  what I believe.  I can understand that the government or parts

24  of the government would say that this constitutes a crime.  I

25  disagree, but I'm here because I'm guilty, and I have to -- I

1   can't agree with every law that I have to keep, but I have to

2   keep the law.  That's my point.

3           THE COURT:  And you agree that a jury would find that

4   under the facts of this case beyond a reasonable doubt, that

5   you did intend to place others in fear of bodily harm or death?

6           THE DEFENDANT:  Your Honor, I, I don't know that I

7   can trust who a jury is and who they're going to be, if they're

8   educated, if they're critical thinkers.  I knew pretty much

9   that you were going to be the judge, and I know that you've

10  been a judge in other cases similar to this, and I'm confident

11  that you have critical thinking abilities, and I'd rather it go

12  in front of somebody that is a critical thinker rather than 12

13  people that I have no idea who they are.

14          THE COURT:  All right.  Well, you know, I want to be

15  satisfied that you've had time to think about this and have

16  made a decision to plead guilty because you are guilty of the

17  charge and that you understand the ramifications of that; so

18  that's where I'm coming from.

19          THE DEFENDANT:  I understand, Your Honor, what a

20  guilty plea entails; and I have to plead guilty.

21          THE COURT:  All right.  Are you under -- are you

22  using any medications which would affect your ability to

23  understand my questions today or answer my questions?

24          THE DEFENDANT:  No, Your Honor, I'm not.

25          THE COURT:  All right.  And has anybody made any

1   threats or promises that aren't in this agreement to get you to

2   plead guilty here today?

3          THE DEFENDANT:  No, Your Honor.  I mean, it's --

4          THE COURT:  There's no side deals?

5          THE DEFENDANT:  No.

6          THE COURT:  All right.  Before I can accept your

7   plea, I need to make sure that you understand what your rights

8   are; and so we're going to go through those now; and your first

9   right is to have a grand jury consider these charges against

10  you and formally indict you, which is the formal method of

11  bringing a case in federal court.

12          A grand jury is made up of two dozen members of our

13  community.  They'd have to hear evidence from a witness who is

14  under oath.  A majority would have to find that there was

15  probable cause to believe that you committed this offense

16  before you would be formally indicted.

17          Do you understand that process?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  And did you discuss that right with

20  Mr. Yamamoto to require the government to put the case in front

21  of a grand jury?

22          THE DEFENDANT:  Yes, sir, Your Honor.

23          THE COURT:  All right.  And you've decided to waive

24  that right and proceed by criminal information that has been

25  filed here today?

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  All right, I find that you've knowingly

3   and voluntarily waived your right to the grand jury

4   consideration.

5        You have a right to plead not guilty to the criminal

6   information and require the government to prove its case

7   against you beyond a reasonable doubt.  Do you understand that?

8        THE DEFENDANT:  Yes, I do, Your Honor.

9        THE COURT:  And you're entitled to a jury trial if

10  you wish it, where 12 members of the community would have to

11  unanimously find you guilty beyond a reasonable doubt.  Do you

12  understand that?

13       THE DEFENDANT:  I waive that, Your Honor.  I waive

14  that right, Your Honor.

15       THE COURT:  All right.  And you understand that if

16  there was a trial, the government would have to put witnesses

17  on the stand who would be under oath, subject to

18  cross-examination by Mr. Yamamoto.  You'd have a right to

19  contest the evidence the government sought to admit against

20  you.  You'd have a right to testify in a trial if you wished

21  and an absolute right not to testify if you did not wish to,

22  and the jury or the Court couldn't infer your guilt because you

23  did not testify.

24       You'd have a right to use the power of the Court to

25  compel witnesses to attend and testify in your behalf, and

```
1   you'd have a right to counsel at every stage of the proceedings
2   against you.
3            Do you understand those rights?
4            THE DEFENDANT:  Yes, sir, Your Honor, I understand.
5            THE COURT:  And you've discussed your right to plead
6   not guilty with Mr. Yamamoto and have decided to waive that
7   right and plead guilty here instead?
8            THE DEFENDANT:  Yes.
9            THE COURT:  All right.  Do you understand that for
10  a -- upon a conviction of Title 18, section 2261(a)(2)(B), the
11  maximum penalty is up to five years of imprisonment, $250,000
12  fine, restitution of $100 special assessment, three years of
13  supervised release?
14           THE DEFENDANT:  Yes, sir, I understand.
15           THE COURT:  That's the maximum.
16           THE DEFENDANT:  I understand.
17           THE COURT:  And you understand that supervised
18  release is a period of probation which begins after you have
19  served any sentence and that if you're found to have violated
20  the conditions of that supervised release, you could be ordered
21  back to the penitentiary for the full length of the supervised
22  release period?
23           Do you understand that?
24           THE DEFENDANT:  Yes, sir, I understand.
25           THE COURT:  All right.  As you, I believe, know, I'm
```

1    not going to sentence you today.  I'm going to order a

2    pre-sentence report.  I'm going to continue this case for, you

3    know, three months or four months; and I'll know much more

4    about you when we come back together; and that sentencing date,

5    there'll be a pre-sentence report that will tell me about your

6    history and much more than I know about you and also will

7    include a guideline calculation that I consider in, in my

8    sentence.  That hasn't been calculated as of today.  It won't

9    be finally decided until your date of sentencing.

10           Do you understand that?

11           THE DEFENDANT:  Yes, Your Honor, I understand.

12           THE COURT:  All right.  You've gone over the

13   existence of the guidelines with Mr. Yamamoto and discussed

14   that with him?

15           THE DEFENDANT:  Yes, I have, Your Honor.

16           THE COURT:  All right.  Do you understand that I have

17   no idea what sentence I'll determine is appropriate under the

18   sentencing factors that I review and really won't until your

19   day of sentencing?  Do you understand that?

20           THE DEFENDANT:  Yes, I understand, Your Honor.

21           THE COURT:  All right.  And knowing the uncertainty

22   of what sentence may be imposed, you have nonetheless agreed to

23   waive your right to appeal your conviction and also any

24   sentence that I impose as long as it's a lawful sentence?  Do

25   you understand that?

1        THE DEFENDANT:  I understand, Your Honor.

2        THE COURT:  All right.  We've discussed your immunity

3   from further prosecution.  The statement of facts as revised by

4   you, have you had time to go over that and make the changes

5   that you sought?

6        THE DEFENDANT:  Yes, Your Honor.

7        THE COURT:  Okay.

8        THE DEFENDANT:  Three times.  The last changes that

9   they made today I just went over about ten minutes ago, but

10  I -- it's -- I'm, I'm okay with that.

11       THE COURT:  All right.  And is it accurate?

12       THE DEFENDANT:  As a statement of facts?  It's pretty

13  much.  As I said, Your Honor, I don't think that -- they're not

14  going to let me make the charge, so --

15       THE COURT:  Well, you've made comment about the

16  commentary in some of the paragraphs; but do you disagree with

17  the facts that are included in any of the paragraphs?

18       THE DEFENDANT:  As from what I've looked through,

19  Your Honor, and I've looked through the whole thing, I agree

20  that it's factual that I put every post up that they stated;

21  and that's really, you know, I would not accept this unless I

22  said that; but that's really all I could say right now, Your

23  Honor.

24       THE COURT:  All right.  And is it correct that the

25  Revolution Muslim organization was started in December of 2007

1  by you as well as Mr. Morton?

2          THE DEFENDANT:  The exact date, Your Honor, I'm not

3  sure.  I believe it was 2007.  I don't know exactly what date

4  it was, but it was indeed started by myself and Mr. Morton.

5          THE COURT:  All right.  And you were an administrator

6  of the Web site and Internet platforms and made postings and

7  interacted on that Web site?

8          THE DEFENDANT:  That is correct, Your Honor.

9          THE COURT:  All right.

10          THE DEFENDANT:  Not every post but, I mean, I was, I

11  was in charge of the Web site.

12          THE COURT:  All right.  And that, and that on or

13  about February 28 of 2008, you posted a video titled "Knowledge

14  is For Acting upon - The Manhattan Raid"?  That's in paragraph

15  4.

16          THE DEFENDANT:  Paragraph 4.  I just -- is this a

17  yes-no --

18          THE COURT:  That's a yes or --

19          THE DEFENDANT:  That's a yes-no?  I mean --

20          THE COURT:  You can add anything you'd like to your

21  answer.

22          THE DEFENDANT:  Honestly, I have to take

23  responsibility for everything.  I don't remember if I was the

24  one -- and I'm not using this to be a slickster.  I will take

25  responsibility for it; but I don't remember, if you're asking

1   me honestly, that I put it up there.

2         THE COURT:  Whether you pushed the button or somebody

3   else pushed the button?

4         THE DEFENDANT:  But I, I will assume that I did do

5   so.

6         THE COURT:  All right.  And you were aware of its

7   posting.

8         THE DEFENDANT:  Yeah, but this is not -- I've posted

9   many things by many people, Your Honor, and this is not -- I

10  did not watch that video, and I did post that video.  I have no

11  idea -- and I'm saying this under affirmation -- I have no idea

12  that that's what that meant, but ignorance is not an excuse.

13        THE COURT:  All right.  Well, let's move on to

14  paragraph 7, where it states that on November 6, 2009, you

15  posted on the Web site a reference to the shootings by Nidal

16  Hasan.  Is that a correct statement, sir?

17        THE DEFENDANT:  On No. 7.  Yes.  One second, just let

18  me finish.

19        That is correct, Your Honor; I posted it.

20        THE COURT:  All right.  And then in -- if we move on

21  to the heading "Threats Against Jewish Organizations," is it

22  correct that in March of 2008, you posted on the Revolution

23  Muslim Web site a video praising the Palestinian who died in

24  the course of killing eight students and wounding eleven more

25  at the school in Jerusalem?  Paragraph 9.

1           THE DEFENDANT:  Yes, Your Honor.  Can I comment?

2           THE COURT:  Yes, sir.

3           THE DEFENDANT:  The word -- I'm just looking at it

4    right now.  I never post anything praising, because praising,

5    as I understood it, is always illegal.  You're not allowed to

6    praise an act of terror, all right?

7           I put up a video talking about it, but I never said

8    that this -- when I think of praising, Your Honor, I'm thinking

9    of somebody saying he's wonderful, he did this and that, and he

10   did a great job.  That's praise in my understanding.

11          I did put up that video, and my emotions and my words

12   are two different things.  And I do have a little issue with --

13   not a little issue -- I have an issue with it, that word

14   "praising," if that could be modified, but I did put the post

15   up.

16          THE COURT:  All right.  And you ended the video by

17   stating what's in the single space in paragraph 9?

18          THE DEFENDANT:  Expression "Mash-Allah,

19   Subhan-Allah," yes, Your Honor.

20          THE COURT:  All right.  Let's move on to paragraph

21   13.  Is it correct that in, on or about January 20, you posted

22   to the Revolution Muslim Web site a photo of the headquarters

23   of the Chabad organization in Brooklyn, with accompanying links

24   to a video and a map?

25          THE DEFENDANT:  Just one second.

1          That is correct, Your Honor.

2          THE COURT:  All right.  And the language that

3    follows --

4          THE DEFENDANT:  "Do Not Let Orthodox" --

5          THE COURT:  The message, yes, is that correct as

6    well?

7          THE DEFENDANT:  That is correct, Your Honor.

8          THE COURT:  All right.  Including the language, "Make

9    EVERY attempt to reach these people and teach them the message

10   of Islam or leave them a message from Islam"?

11         THE DEFENDANT:  That is correct, Your Honor.

12         THE COURT:  All right.  And that shortly thereafter,

13   and I'm not sure what that means, but I think it means the same

14   day, because paragraph --

15         THE DEFENDANT:  It does not, Your Honor, and that was

16   amended.  I would come to the same conclusion.

17         THE COURT:  Okay.

18         THE DEFENDANT:  I mean, I'd like to know -- they've

19   since taken the wording out, I understand, from that; but had

20   they kept that wording in, I would have asked, well, what is

21   "shortly after"?

22         MR. KROMBERG:  Judge, excuse me?

23         THE COURT:  Yes, sir.

24         MR. KROMBERG:  I think what Mr. Khattab is referring

25   to, there was another sentence in a prior version about a

1    different post made shortly before that was removed, but the

2    shortly thereafter one is an item that Mr. Yamamoto and I

3    exchanged messages about, and we believe that it was

4    immediately thereafter.  According to the -- if you want me to

5    speak in front of the microphone --

6              THE DEFENDANT:  Oh, I'm sorry.

7              MR. KROMBERG:  Thank you.

8              That there was a capture of the Web site that's on

9    Internet Archive as of 5:37 a.m., and it -- and it has the,

10   both *The Anarchist Cookbook* and the initial post, and the

11   initial post was there, something about 1 a.m.  So that maybe

12   wasn't the same day, but it was within six hours, and it was

13   the next post before the beginning of the next business day.

14             Agent McGuckin was the person who did that

15   investigation and advised me.  I sent that message to

16   Mr. Yamamoto with a photo with a screen capture of

17   Mr. McGuckin's computer when he went into the Internet Archive

18   for the picture of the capture at 5:37 a.m. on January 22, when

19   the initial post was made on January 21.

20             THE COURT:  The 20th and 21st?

21             MR. KROMBERG:  I'm sorry, 20th and 21st, thank you.

22             THE COURT:  All right.  I see that in the earlier

23   version, Mr. Khattab, that shortly before the post, you had

24   posted links to a speech by Faisal and a speech by Usama Bin

25   Laden has been taken out of that paragraph; but based on what

1    you've just heard, do you still take issue with when *The*

2    *Anarchist Cookbook* was first posted?

3              THE DEFENDANT:  I put up *The Anarchist Cookbook*, but

4    I'm just telling you honestly I don't remember putting it up,

5    and I don't have these dates engrained in my mind --

6              THE COURT:  Okay.

7              THE DEFENDANT:  -- but what -- so it's just I don't

8    know the time frame, and that's why -- and it's the second time

9    that I saw this.

10             THE COURT:  All right.

11             THE DEFENDANT:  I could be wrong, and I'm not, I'm

12   not trying to --

13             THE COURT:  Well, we have, we have more of an

14   explanation now for why they have used the words "shortly

15   thereafter."

16             THE DEFENDANT:  Okay.

17             THE COURT:  And Mr. Yamamoto will have a chance to

18   investigate that further before sentencing if it's incorrect.

19             THE DEFENDANT:  Okay, Your Honor.

20             THE COURT:  All right?  And then in paragraph 15, it

21   states that the New York Police Department put a surveillance

22   vehicle in front of the Chabad headquarters in Brooklyn and

23   that on January 21 of 2009, you posted on the same Web site a

24   slide show, with photos of the New York Police Department

25   protection, and then a blood-stained Hebrew prayer book from

1    the massacre of the students in 2008.

2          Is that correct?

3          THE DEFENDANT:  Well, I did put that up, but the

4    thing about children, they weren't children; they were adults.

5    It's still -- not that that's any better, but I don't -- I'll

6    accept what's written there.

7          MR. KROMBERG:  I'm sorry, if I can just --

8          THE DEFENDANT:  Sure.

9          MR. KROMBERG:  I think that we might be

10   miscommunicating.  The massacre of the students and another

11   slide of dead children.

12         THE DEFENDANT:  Oh, okay.  I'm sorry, I don't really

13   have great vision.  Please give me a second.

14         ". . . a blood-stained Hebrew prayer book from the

15   massacre of Mercaz HaRav Yeshiva students," okay.  I've got

16   you.  Oh, okay.  I'm sorry, you're right.

17         I'm sorry, Your Honor.

18         THE COURT:  So you posted that, that slide show?

19         THE DEFENDANT:  Yes, I did, Your Honor.

20         THE COURT:  All right.

21         THE DEFENDANT:  Thank you.

22         THE COURT:  And on -- if we go to paragraph 18, it

23   states that on or about January 23 of 2009, you posted again on

24   the Revolution Muslim Web site a video accusing the

25   headquarters of Chabad of funding terrorism and urged viewers

1  to find the leaders of the organizations and hold them

2  responsible.

3          THE DEFENDANT:  Okay.  That is correct, Your Honor.

4          THE COURT:  All right.  And on -- if we go to

5  paragraph 26, it states that on May 21 of 2010, you posted a

6  statement on the IslamicAwakening.com Web site about the, how

7  to effectively scare the Jews and strike fear in the hearts of

8  the Kufar.  Is that correct?

9          THE DEFENDANT:  That is correct, Your Honor.  I can't

10  affirm that it was on that date, but I --

11          THE COURT:  You made that posting?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  All right.  How do you plead then,

14  Mr. Khattab, to the criminal information, which charges that

15  between January 8 of 2009 and the present date, in the Eastern

16  District of Virginia and in New Jersey and elsewhere, that you

17  unlawfully and with intent to place persons affiliated with

18  Jewish organizations in other states, including the

19  organization known as Chabad in Brooklyn, New York, in

20  reasonable fear of death or serious bodily injury through using

21  an interactive computer service?

22          THE DEFENDANT:  I'm sorry, Your Honor, is there a

23  number there on the criminal information?  Can you just give me

24  a second, please?

25          THE COURT:  Oh, sure.

24

```
1              THE DEFENDANT:  Thank you.

2              Your Honor, can I --

3              THE COURT:  Take a moment.  Take as much time as you

4    need.

5              THE DEFENDANT:  Thank you very much.  Please excuse

6    me, sir.

7              (Discussion between Mr. Yamamoto and the defendant

8    off the record.)

9              THE DEFENDANT:  Your Honor?

10             THE COURT:  Yes.

11             THE DEFENDANT:  I'm sorry, thank you.

12             What we've gone through, Your Honor, I -- as I said,

13   I agree to what's been stated and what I've, what I've done.  I

14   have a problem with this last thing, with my intent.  I

15   understand what the government, part of the government is

16   trying to say, but my intention is not and nor was it ever to

17   kill anybody.

18             So it's very hard for me -- I mean, I'll do it

19   because I don't want to go to a trial; I'll be honest with you,

20   Your Honor.  I'm not charged --

21             THE COURT:  It's not that you intended.  That's not

22   what this statute says.  The statute says that you intended to

23   place persons in fear of bodily harm or death, not that you

24   attempted to kill anyone, not that you conspired to kill

25   anyone, not that you assisted in the killing of anyone.
```

1        THE DEFENDANT: But --

2        THE COURT: We'd be in a very different place,

3 wouldn't we, if anybody had actually attacked any of these

4 Jewish centers, wouldn't we?

5        THE DEFENDANT: Absolutely.

6        THE COURT: But that hasn't happened. It never

7 happened.

8        The issue is did you put people in reasonable -- let

9 me make sure I -- reasonable fear of death or serious bodily

10 injury through your postings on the Revolution Muslim Web site

11 in the use of videos and photos and slides and messages, in

12 particular to the organization known as Chabad in Brooklyn, New

13 York.

14        THE DEFENDANT: Honestly, Your Honor, I -- as I

15 stated before, I accept that I could have been in error, that

16 that's how these, these things were taken. My intention was

17 never to cause anybody bodily harm, nor would I ever say

18 something in front of a camera or on my Web site to insinuate

19 that.

20        So I can see -- and that's what I'm affirming

21 today -- that out of my stupidity, which is not an excuse, but

22 I never intended to physically hurt anybody, and if I -- if I

23 did, I certainly would not do it in a manner like that.

24        THE COURT: Well, okay. Then this is the issue:

25 Either you have to say: Yes, I intended to put people in fear

1    of serious bodily harm or death; or you have to say that I, in

2    looking at these facts, believe the government could prove

3    beyond a reasonable doubt that, in fact, that was my intent;

4    and if you're not prepared to do one of those, then --

5              THE DEFENDANT:  Well, Your Honor, I believe that they

6    could prove that, but I -- that's my point.  My allocution is

7    not so great, but that is -- I think that they could prove it,

8    but that is not my intention, Your Honor.

9              THE COURT:  All right.  Mr. Yamamoto, have you gone

10   over the facts of the case with Mr. Khattab?

11             MR. YAMAMOTO:  Yes, Your Honor.

12             THE COURT:  And gotten discovery from the government?

13             MR. YAMAMOTO:  Yes, Your Honor.

14             THE COURT:  How long has this been kind of brewing?

15             MR. YAMAMOTO:  Several months, Your Honor.

16             THE COURT:  All right.  And you've had many

17   conversations during that time with the government about the

18   nature of the case and the -- and their information that they

19   possessed?

20             MR. YAMAMOTO:  Correct, Your Honor.

21             THE COURT:  All right.  And you've had discussions

22   with Mr. Khattab and especially surrounding the accuracy of the

23   statement of facts?

24             MR. YAMAMOTO:  Correct, Your Honor.

25             THE COURT:  After our discussions today in court and

1   previously, do you believe that Mr. Khattab's plea is knowingly

2   and voluntarily made?

3            MR. YAMAMOTO:  Yes, Your Honor.

4            THE COURT:  And that there's a basis in fact for it?

5            MR. YAMAMOTO:  Yes, Your Honor.

6            THE COURT:  All right.  I'll -- based on the

7   agreement and the statement of facts and our conversation, I'll

8   find Mr. Khattab guilty of the criminal information.  I find

9   without question that there's evidence to support each of the

10  elements of the offense.  I'll continue this matter and order a

11  pre-sentence report.

12           How is February 7?  That's about a hundred days.  Is

13  that -- I don't know if this case requires any more time or

14  not.  Mr. Kromberg?

15           MR. KROMBERG:  I don't think it will require any

16  unusual amount of time, and that date is as good as any.

17           MR. YAMAMOTO:  That's fine, Your Honor.

18           THE COURT:  All right.  Mr. Khattab, is that date

19  good, sir?

20           THE DEFENDANT:  As you see, Your Honor.

21           THE COURT:  All right, then we'll continue this

22  matter until February 7, at 9 a.m., for sentencing.  As I said,

23  I'll order a pre-sentence report.

24           I've received a Pretrial Services report indicating

25  that Mr. Khattab lives in Atlantic City and is employed, and

1    the Pretrial Services recommended certain conditions for his

2    bond.  Is there any objection to --

3            MR. KROMBERG:  No objection to being released on

4    those conditions, Judge.  We'd note that I think there may be

5    more than -- there may be an Israeli passport as well as an

6    American passport.

7            THE DEFENDANT:  I no longer have it; I'm sorry.

8            THE COURT:  Do you have a passport any longer?

9            THE DEFENDANT:  I had an Israeli passport.  I don't

10   have it any longer.  I mean, I assume I still have dual

11   citizenship, but I don't have that passport, and I gave it --

12           THE COURT:  You don't have it?

13           THE DEFENDANT:  I gave it to somebody who was with

14   our organization when I left with all my papers and my son's

15   papers.  When I came back to get it, he said that he misplaced

16   the whole package.  My son has since fixed all his papers

17   without it, and I certainly don't have a use for it.  I don't

18   use it; and I won't use it; and I'm not getting out with it,

19   Your Honor.

20           THE COURT:  All right.  And I understand you're on a

21   watch list anyway, so --

22           THE DEFENDANT:  Exactly.

23           THE COURT:  All right.  I'm going to release you on

24   $25,000 personal recognizance bond, which means it doesn't cost

25   you any money unless you fail to appear at subsequent hearings,

1    including the February 7 hearing.

2            THE DEFENDANT:  Okay, Your Honor.

3            THE COURT:  I'll order that you be supervised by

4    Pretrial Services, and they'll transfer that supervision up to

5    New Jersey, that you not obtain any new travel documents, that

6    your travel be restricted to the District of New Jersey and the

7    Washington Metropolitan area for travel purposes.

8            MR. YAMAMOTO:  Your Honor?

9            THE COURT:  Yes, sir.

10            MR. YAMAMOTO:  Could you add New York to that,

11    please?  His family is in New York.

12            THE DEFENDANT:  My son and my grandson live in New

13    York City, if it's possible.

14            THE COURT:  All right.  And New York, yes.

15            THE DEFENDANT:  And very seldom do I go up anyway.

16            THE COURT:  I'm sorry?

17            THE DEFENDANT:  Very seldom do I go up, but if the

18    need arises.

19            THE COURT:  All right.  No, I think that's very

20    reasonable.  And New York.

21            Refrain from posting any material on the Internet

22    which has any political overtones.  Do you use the Internet for

23    business purposes?

24            THE DEFENDANT:  Your Honor, in general, no.  I mean,

25    I use Facebook now.  I use YouTube.  Not really.  I've not

1  posted anything.  I do use Facebook, and I don't -- he would

2  tell you better than I; I really have not put anything -- you

3  tell me this:  Have I behaved myself in the past?

4         I really -- but the only -- I'm a married man, and my

5  wife is in Morocco, and the only way I can communicate with my

6  wife and my kids is that, and I live in a room, and it's like

7  my only outlet to civilization, and I live in Atlantic City.

8         THE COURT:  Yeah.

9         THE DEFENDANT:  So everything has come -- and it's

10 open.  Anybody could see it.  I'm not, I'm not --

11        THE COURT:  All right, refrain from posting any

12 political -- postings of any political nature.  Is that fair to

13 say?

14        THE DEFENDANT:  Okay.  Your Honor, and by

15 "political," I'm not trying to -- I really want to make it

16 clear.  What --

17        THE COURT:  Well, I guess that's not -- it isn't very

18 exact; you're right.  Anything that would incite others, offend

19 others.  There's no Web site, Revolutionary Muslim Web site any

20 longer; that's gone.

21        THE DEFENDANT:  No.

22        THE COURT:  And I don't know whether you have,

23 operate any other Web sites?

24        THE DEFENDANT:  No, not since that time that I know

25 of, Your Honor.  Is what I'm posting now questionable, or

1    should I --

2           SA McGUCKIN:  I haven't seen anything unreasonable in

3    recent history.

4           THE COURT:  All right.

5           THE DEFENDANT:  So I can continue as I am status quo.

6    I won't put any --

7           THE COURT:  All right.  And check with Mr. Yamamoto

8    if you think that you want to post something that may get you

9    in trouble.

10          THE DEFENDANT:  No, no.  Your Honor --

11          THE COURT:  It's a really important time for you.

12          THE DEFENDANT:  I understand, Your Honor.

13          THE COURT:  And you're on conditions of release, and

14   they can be revoked at any time if there's cause for doing so,

15   and you don't want to make a mistake unwittingly that causes

16   your bond to be revoked.  So when in doubt, check with

17   Mr. Yamamoto.  If he needs to check with Mr. Kromberg, he can

18   do so; and that's not an unreasonable request, I don't think,

19   at this time.

20          THE DEFENDANT:  That's fine.  Thank you, Your Honor.

21          THE COURT:  Otherwise, status quo with your use of,

22   of the Internet.

23          There's a condition, submitting to and paying for

24   computer monitoring at the direction of Pretrial Services.

25          MR. YAMAMOTO:  Your Honor, I think the government's

1    been monitoring him, so I don't know --

2              THE COURT:  Yeah, I don't know that -- I'm not going

3    to order that condition.  If it turns out that it's, Pretrial

4    Services for some reason asks for it, we'll discuss that in the

5    future.

6              MR. YAMAMOTO:  Your Honor, with respect to the

7    passport, may he turn the passport over to me to hold?  There's

8    been trouble in the past about passports getting lost.

9              THE COURT:  Disappearing, yeah.  Getting over to the

10   State Department and -- yes, you can surrender your -- you have

11   an American --

12             THE DEFENDANT:  I have a valid United States

13   passport, Your Honor.

14             THE COURT:  -- passport, all right.

15             Then surrender that passport to Mr. Yamamoto for, for

16   safekeeping.

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  And you can mail it to him when you

19   get -- I don't know if you have it with you.

20             THE DEFENDANT:  I have it with me.

21             THE COURT:  You have it, all right.  So then he can

22   take possession of that now.

23             All right, anything else in this matter today?

24             MR. KROMBERG:  No, Your Honor.

25             THE COURT:  All right.  As I said, it's an important

1  time for you.  When you have any questions about what's going

2  on, there's the man to talk to.

3          THE DEFENDANT:  Thank you very much, Your Honor.  I

4  appreciate it.

5          THE COURT:  All right, then if you'll take -- we're

6  going to put the bond conditions together.  If you'll sign

7  those and then take Mr. Khattab to the Probation Office?

8          MR. YAMAMOTO:  Yes, Your Honor.

9          THE COURT:  Have a seat.  Wait for a minute.

10          THE DEFENDANT:  Thank you, Your Honor.

11          THE COURT:  All right, look over those release

12  conditions, and sign them, and if there's any questions, I'll

13  be in chambers.

14          MR. YAMAMOTO:  Thank you, Your Honor.

15          MR. KROMBERG:  Thank you, Judge.

16          THE COURT:  All right, we're in recess.  Thank

17  you-all.

18                        (Which were all the proceedings

19                         had at this time.)

20

21              CERTIFICATE OF THE REPORTER

22      I certify that the foregoing is a correct transcript of

23  the record of proceedings in the above-entitled matter.

24

25                                  /s/
                              Anneliese J. Thomson